MARY CULLEN, as Administrator, etc., Respondent, *v.* THE PRESIDENT, ETC., OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellants.

*Covrt of Appeals, June 4, 1889.*

Reversing 40 Hun, 637, mem.

*Negligence. Railroad crossing.*—The omission of a railroad company to perform its duty in ringing the bell or blowing the whistle of an engine approaching a crossing, does not justify a traveler on the highway in not exercising care by looking and listening before crossing the railroad track, in order to escape the danger of moving trains.

Appeal from a judgment of the general term, reversing a judgment dismissing the complaint.

*Edwin Young*, for appellants

*A. D. Wait*, for respondent.

ANDREWS, J.—We are of opinion that the plaintiff not

only failed to meet the burden resting upon her to show, directly or by inference, that the death of the intestate was caused solely by the negligence of the defendant, but that the evidence affirmatively shows that he omitted the duty of looking or listening before crossing the track, to ascertain whether an engine was approaching, and that this omission on his part contributed to his death. The allegation of negligence on the part of the defendant was fully established. The engine was backing from the south at a high rate of speed, and approached a dangerous crossing without ringing the bell or sounding the whistle, or giving any notice.

The difficulty in the plaintiff's case, as has been stated, is upon the point of the intestate's negligence. The day of the accident was Sunday. The deceased left his house about nine in the morning, to attend church at Middle Granville, a place north and west of the crossing. He drove a young horse attached to a buckboard wagon, and was alone. He drove first to Granville, a point about half a mile south of the crossing, and then went northerly on the highway to the crossing, on his way to Middle Granville. The highway from Granville to the crossing runs nearly parallel with the railroad, but gradually approaches the track and crosses it in a northerly direction at an acute angle. The highway, for most of the distance, is several feet above the railroad, and at points between Granville and the crossing, a traveler on the highway could see the track, but for the greater part of the distance the view is obstructed by trees and houses, and the bank under which the railroad runs. The highway, as it approaches the crossing, is carried over a hill or elevation, and, at a point eight or ten rods south of the crossing, descends to the level of the railroad track.

Three witnesses saw the occurrence. They were called by the plaintiff, and they substantially agree in their narrative. They rode together from Granville in a wagon,

following the intestate, and were in sight of him all the way to the crossing, and from two to six rods behind him. The intestate drove from Granville to the crossing at the rate of not less than six miles an hour, keeping a uniform and steady gait, neither checking nor accelerating at any point the speed of his horse. When these witnesses reached the top of the hill, they for the first time heard and saw the engine. It was then nearly opposite them.

Their eyes had been upon the intestate. He was then ahead of them near the crossing, driving as usual and looking in front, in the direction of his horse. He gave no indication that he heard the engine; nor did he make any movement such as would have been necessary to enable him to look to the south for an approaching train. Seeing the danger, the persons in the wagon behind "hallooed" to attract his attention, but he did not appear to have heard the warning until he got upon the track, when he partially turned and immediately was struck by the engine. It appeared from measurements subsequently taken, that from a point seventy feet from the crossing, the track to the south could have been seen by the intestate, if he had looked, for 146 feet, and that from fifty feet from the crossing he could have seen south on the track at least 220 feet, and still further as he advanced towards the crossing.

It seems very plain that the duty which rests upon a traveler in approaching a railroad crossing to look and listen was not discharged by the intestate. It may be said that he was thrown off his guard by not hearing the engine; by the omission of the defendant's servants to ring the bell or sound the whistle; by the fact that engines or trains were seldom moved on this road on Sunday, and in addition it is urged that he could not have looked south without partially turning around, and that if he had seen the engine he would have had difficulty in turning his wagon in the highway at that point. But we cannot listen to these suggestions without opening the door to excuses

which in the end would subvert the rule which on the whole tends, we think, to protect life, viz.: that the omission of a railroad company to perform its duty, under circumstances like these, does not justify a traveler on a highway in not observing care on his own part by looking and listening before crossing a railroad track, in order to escape the danger of moving trains. There is no evidence that the intestate did look or listen. On the contrary the strong inference from the evidence is that he neither looked nor listened, and there is no reasonable ground for the supposition that he was in a position where he had to choose between imminent perils, and that he could not have escaped one without encountering the other.

We think the judgment of the general term should be reversed, and the judgment of nonsuit affirmed.

EARL, FINCH and GRAY, JJ., concur; DANFORTH, J., dissents; PECKHAM, J., not voting; RUGER, Ch. J. absent.